UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| COOKWARE SUSTAINABILITY ALLIANCE,<br><br>    Plaintiff,<br><br>v.<br><br>KATRINA KESSLER, in her official capacity as Commissioner of the MINNESOTA POLLUTION CONTROL AGENCY (MPCA),<br><br>    Defendant. | Case No. 0:25-cv-00041 (JRT/DTS)<br><br><br>**PLAINTIFF'S REPLY IN FURTHER SUPPORT OF ITS MOTION FOR A PRELIMINARY INJUNCTION** |

## INTRODUCTION

Plaintiff was forced to initiate this litigation because the challenged statute wrongly assumes that <u>every</u> species of fluorocarbon presents health risks to humans. They most definitely do not, as Plaintiff's opening brief and expert declarations exhaustively demonstrated. The State could not rebut that scientific error infecting its position — and yet, its defense of the statute simply **doubled-down** on the simplistic, incorrect view that <u>all</u> types of fluorocarbons are dangerous. Repetition cannot turn an error into the truth.

The empty recitation of inapplicable and incorrect tropes, however, reveals the State's inability to engage Plaintiff's *as-applied* challenge — a challenge to the market impact and lack of safety benefits to the application of Amara's Law *to the specific type of cookware sold by Plaintiff's members*. An examination of the <u>relevant</u> facts and law

demonstrates that Plaintiff is likely to succeed on the merits of its claims and deserves injunctive relief from the State's enforcement of the Statute[1] *against its members' specific cookware products* pending final judgment in this case.

## ARGUMENT

### I.     The State Misses the Critical Point of this Case.

Much of the State's Response is simply irrelevant to the actual constitutional challenge before the Court. The State spends much of its effort defending the Statute's ban on *other* categories of products containing some *other* species of "PFAS" than the ones used in Plaintiff's cookware. *See, e.g.*, State's Response at 2, 9, 11, *id.* n.11, 12 n.13, 14. But those other products and other kinds of PFAS are not at issue here. Plaintiff did not raise a facial challenge to every application of the Statute. Perhaps the State would have preferred that approach, as presumably the prohibition of 3M's production of any kind of PFAS is easier to defend. *See* State's Response at 2. Rather, Plaintiff has made *only* an as-applied challenge concerning *only* the prohibition on the cookware products manufactured by its members.

Plaintiff is likely to succeed on the merits of its as-applied challenge. The only universe of actors relevant to the as-applied challenge here are the cookware manufacturers in the industry. There are such manufacturers both within and outside of Minnesota. But the Statute's ban burdens *only* the out-of-state manufacturers, because only out-of-state manufacturers manufacture fluoropolymer nonstick cookware. **That is discriminatory**

---

[1] For ease of reference, this brief uses the same defined terms and abbreviations used in Plaintiff's opening brief. *See* Mem. of Law, ECF No. 12, at 1, 7.

**effect**, and that <u>effect</u> is sufficient to trigger heightened judicial scrutiny under the Dormant Commerce Clause.

For that reason, the State's focus on the issue of discriminatory *intent* once again focuses on a legally irrelevant point. The Dormant Commerce Clause does not reserve heightened scrutiny only for those laws that expressly or purposefully discriminate against interstate commerce. Rather, even facially neutral laws that have the *effect* of burdening out-of-state commerce over in-state commerce are constitutionally suspect. *See, e.g., U & I Sanitation v. City of Columbus*, 205 F.3d 1063, 1067 (8th Cir. 2000) (emphasizing that laws that "discriminate[] against interstate commerce" must face "rigorous scrutiny," and noting that "even if it is facially neutral, the law may have a discriminatory purpose or a discriminatory effect").

The State wrongly suggests that this application of established law would lead to "absurd" results. That concern is misplaced. It is not, as the State wrongly suggests, that the Constitution blocks every state law that has a discriminatory effect on out-of-state commerce. *See* State's Response at 13. Rather, such discriminatory regulation can pass constitutional muster under the Dormant Commerce Clause so long as its proponents can show "that it has no other means to advance a legitimate local interest." *Id.* Here, the State unquestionably fails to make that showing because the prohibition against the specific fluoropolymers used in Plaintiff's cookware offers no public benefit.

3

**II.     The State Does Not — and Cannot — Dispute the Dispositive Scientific Facts.**

The State chooses to ignore the crucial distinction between the fluoropolymers used in cookware and the small molecule PFAS that have prompted health concerns. The result is that the chemical expert declaration submitted by Plaintiff constitutes the **undisputed factual record** before the Court on this Motion. And that record is unequivocal: the fluoropolymers used in Plaintiff's cookware, like PTFE, are large molecules with fundamentally different physical properties than small molecule PFAS, such as PFOA.

That indisputable fact is critical. It is essentially dispositive to this case, but the State does not meaningfully engage with it.

As noted above, Plaintiff has made an as-applied challenge. The question before the Court, therefore, is not whether the State's ban on the category of compounds the Statute defines to be PFAS, as a whole, is justified. Rather, it is whether banning large fluoropolymers like PTFE, as used in the nonstick cookware made by Plaintiff's members, violates the Dormant Commerce Clause.

The Statute, as applied to the cookware made by Plaintiff's members, cannot survive that analysis. The undisputed factual record before the Court demonstrates that the fluoropolymers used in cookware are safe and are not a source of pernicious small-molecule PFAS. There is, therefore, no conceivable local benefit to banning fluoropolymer cookware in the State. Under either a discriminatory effect or a *Pike* test theory, a regulation devoid of local benefit that burdens interstate commerce is unconstitutional. The absence of local benefit means that this discriminatory statute does not advance any legitimate state interest. And as a matter of *Pike* balancing, the analysis must resolve in

4

Plaintiff's favor when there is *effectively nothing* on the State's side of the scale.

The State can only gesture toward some scientific justifications for regulating PFAS in general; it offers the Court nothing that addresses the glaring lack of a local benefit to banning the specific nonstick cookware at issue. For instance, the State can muster only one citation — to a single irrelevant study[2] — in its unsuccessful attempt to suggest that the fluoropolymers used in Plaintiff's members' cookware (like PTFE) could be a source of harmful small-molecule PFAS. *See* State's Response at 14 n.16. That study examined fluoropolymer tubing, not cookware, that was made using a different grade, composition, thickness, and quantity of PTFE than that used in cookware, under conditions completely different than those that cookware undergoes through manufacture and use. That citation is simply misdirection. In fact, as thoroughly explained in Plaintiff's opening brief and its chemical expert's declaration, the *specific* food-grade fluoropolymer materials at issue here, used in the *specific* types of cookware at issue here, have been repeatedly examined and approved as safe for food contact by the FDA. See Parker Decl., ECF No. 14, at ¶ 15

---

[2] The State's Response is unsupported by any verification or other proper method of introducing evidence, leaving it to rely solely on judicial notice for the facts it seeks to inject into the record. *See* State's Response at 2 n.2. But the articles cited in its brief are not properly admissible via judicial notice, which is limited to facts that "are matters of common knowledge or are capable of certain verification." *McIvor v. Credit Control Servs., Inc.* 773 F.3d 909, 914 (8th Cir. 2014) (quoting *Am. Prairie Const. Co. v. Hoich,* 560 F.3d 780, 798 (8th Cir.2009)). Even if they were, judicial notice would do no more than establish the authenticity and existence of the articles, not the facts and scientific conclusions contained therein. *Cf. Pro-Life Action Ministries v. City of Minneapolis*, 700 F. Supp. 3d 687, 696 (D. Minn. 2023) ("Although transcripts of public hearings may be considered matters of public record, the court may merely take notice of the existence of the transcript and hearing; it may not evaluate testimonial statements recorded in the transcript that contradict the pleadings. (internal quotation marks omitted).

(noting that FDA first approved fluoropolymer nonstick cookware in 1962, and published a reaffirmation of its safety as recently as 2024).

### III. Plaintiff Has Made a Sufficient Showing of Irreparable Harm.

Finally, Plaintiff has made a sufficient showing of irreparable harm for a preliminary injunction during the pendency of this case. As noted in its opening brief, there is a fluid interrelationship between the factors justifying an injunction. Where, as here, Plaintiff has made a compelling showing of likelihood of success on the merits, the degree of harm necessary for an injunction is correspondingly lower. *See, e.g.*, *Nebraska v. Biden*, 52 F.4th 1044, 1046 (8th Cir. 2022) ("[W]here the movant has raised a substantial question and the equities are otherwise strongly in his favor, the showing of success on the merits can be less."); *see also, e.g.*, *Raffington v. Cangemi*, No. CIV. 04-3846JRTRLE, 2004 WL 2414796, at *1 (D. Minn. Oct. 22, 2004) (noting "the probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiffs will suffer absent the stay").

The State wrongly suggests that Plaintiff could have challenged the law at any time since it was enacted. This again is an outgrowth of the State's instance on fighting the straw man of a facial challenge. Plaintiff's *as-applied* challenge addresses only the discriminatory effect of the Statute as it pertains to Plaintiff's cookware products. And that specific Dormant Commerce Clause challenge — the only claim on which Plaintiff seeks injunctive relief — became ripe only when in-state cookware manufacturers discontinued product lines in order to avoid being burdened by the law. *See* Burns Decl., ECF No. 13, at ¶ 27 (noting that in-state manufacture of fluoropolymer nonstick was discontinued only

6

in June 2024). Moreover, this is not, as is generally the case, a situation where "delay" means that the movant has been suffering the challenged harm for some time and, thus, its willingness to endure the injury undercuts its argument for irreparable harm. Rather, Plaintiff brought suit and sought an injunction as soon as the Statute went into effect, its injuries were realized, and its standing to challenge the law unquestionable.

## CONCLUSION

For these reasons, and the reasons set forth in its opening brief, Plaintiff respectfully requests the Court grant its Motion and enjoin enforcement of the Statute as against its members' products during the pendency of this action.

Dated: February 14, 2025

Respectfully Submitted,

**COZEN O'CONNOR**

/s/ *Cassandra M. Jacobsen*
Cassandra M. Jacobsen (#0400120)
cjacobsen@cozen.com
33 South 6th Street, Suite 3800
Minneapolis, MN 55402
(612) 260-9000 | Telephone
(612) 260-9080 | Facsimile

Stephen Miller (PA 308590)
*Admitted pro hac vice*
samiller@cozen.com
Andrew Linz (PA 324808)
*Admitted pro hac vice*
alinz@cozen.com
1650 Market Street, Suite 2800
Philadelphia, PA  19103
(215) 665-2000 | Telephone
(215) 665-2013 | Facsimile